# Selma Street & Suburban Railway Company *v.* Owen.

*Action for Damages for Personal Injuries.*

[Decided December 18, 1901. ]

1. *Passenger on street car; duty to inform driver of intention to alight; collision.*—A passenger on a street car which is about to collide with a locomotive, is under no duty to inform the driver that she wishes to alight.

2. *Same; jumping from car; knowledge of driver.*—Where a passenger on a street car, which is about to collide with a locomotive, jumps from same and is injured, it is immaterial whether the driver knew that plaintiff was about to jump therefrom when he caused the mule to quicken its pace as she was about to alight; the complaint making no claim for his action in this respect.

3. *Same; pleading; necessity to leave moving car.*—A complaint, which avers that as the street car (on which plaintiff was a passenger) was driven on a railroad track, an engine came along the track at a high and rapid rate of speed and was about to run into the car; that plaintiff became frightened, and hearing frantic cries from the driver, jumped from her seat, and, seeing the engine coming at a high rate of speed and that it was about to collide with the car, and being thereby still more frightened, she attempted to jump off, and received the injuries complained of, shows a case of apparent necessity for leaving the moving car.

4. *Same; reasonably apparent necessity to leave moving car, how considered.*—A reasonably apparent necessity for a passenger to leave a moving car, produced by the negligence of the carrier, stands upon the same footing as a real necessity so pro-

[Selma Street & Suburban Railway Company v. Owen.]

duced, and the rights and liabilities of the parties are to be adjudged accordingly.

5. *Same; averments showing that collision is imminent.*—An averment that an engine was coming toward a street car at a high and rapid rate of speed and was about to collide with or run into the car, is to be taken to mean that the collision was imminent.

6. *Same; jumping from moving car, under necessity; proximate cause.*—Where negligence of a carrier creates an apparent necessity for a passenger to leap from a moving car, and the leap produces injury, the negligence is the proximate cause of the injury.

7. *Same; passenger injured by jumping from moving car under apparent necessity; defense.*—Where a complaint shows an injury to a passenger as a result of leaping from a moving car under a necessity which was reasonably apparent and which was caused by the carrier's negligence, it is no defense that plaintiff was not in actual peril when she jumped.

8. *City ordinance; how proved.*—A city ordinance, copied upon a book of city ordinances, kept in the office of the city clerk and identified by him, is admissible in evidence.

9. *Contributory negligence; charge concerning.*—In an action for damages for personal injuries, where contributory negligence is an issue, a charge is proper that "if the plaintiff, on the occasion complained of, acted in a manner which an ordinarily prudent person would not have acted, and this conduct was the cause of or contributed materially to her injury, she can not recover."

10. *City ordinance; record copy as evidence; signatures of city officers.*—A record copy of a city ordinance contained on the book of city ordinances, is not inadmissible in evidence because the signatures thereto, purporting to be the signatures of the mayor and clerk, are not shown to be in the handwriting of those officers.

11. *Damages; when not excessive for personal injuries.*—Where plaintiff, a woman, in leaping from a street car, broke her ankle bone in two places, and also her arm, and in consequence was kept from her work from three to four months, and was compelled to keep her limbs bandaged in plaster of paris for nine or ten weeks, and testified that the suffering was very severe; and where at the time of the injury she was earning forty-five to fifty dollars a month, and testified on the trial (about eleven months after the injury) "I have been earning not more than $30 or $35 per month since the accident; I do not earn as much as I did before the accident because I cannot get around;" and her physician's bill was $50. *Held*: That a verdict for $3,000 was not excessive.

APPEAL from Selma City Court.

Tried before Hon. J. W. MABRY.

This was an action brought by Mrs. A. M. Owen against the Selma Street & Suburban Railway Company, a corporation, and sought to recover $10,000 damages for personal injuries. The complaint contained three counts, the substance of which is sufficiently shown in the opinion.

The first demurrer filed to the complaint by the defendant was based upon the ground that it did not appear from the complaint that the plaintiff before jumping from the car, informed the driver that she wished to alight from the moving car; and that it does not appear that the driver knew that the plaintiff was about to jump from the moving car, when he caused the mule to quicken its pace. This demurrer was overruled. Thereupon the defendant filed a second demurrer to the complaint upon the following grounds: "1. It does not appear from the complaint that the injury complained of was the proximate effect of the alleged negligence of the defendant. 2. It is not alleged in the complaint that the plaintiff was in peril when she jumped from the car. 3. No facts are averred in the complaint to show that the plaintiff was in peril when she jumped from the car. 4. That it is not alleged in the complaint that the act of the driver in causing the mule to quicken its pace was a violation of its duty towards the plaintiff. This demurrer was overruled. The defendant filed several pleas. The first plea was the plea of the general issue. The second, third, and fifth pleas were as follows: "2. And the defendant for further answer to the complaint says that the injuries complained of were the proximate result of plaintiff's contributory negligence." "3. And the defendant for further answer to the complaint says that the injuries complained of were the proximate result of plaintiff's contributory negligence, in this, that plaintiff jumped from defendant's moving car, without necessity, and thereby caused the injuries complained of, which injuries could have been avoided if plaintiff had remained on the car." "5. And the defendant

for further answer to the complaint says that the injuries complained of were the proximate result of plaintiff's contributory negligence, in this, that plaintiff jumped from defendant's moving car when she was in no danger from said engine and when said engine was moving slowly, to-wit, at the rate of four miles an hour, and was not about to run into said car." To the second plea the plaintiff demurred upon the ground that it does not definitely state in what the contributory negligence consisted. To the third plea the plaintiff demurred upon the following grounds: "1. It does not aver that the plaintiff jumped from defendant's moving car without fear or necessity. 2. Said plea does not aver that plaintiff did not have reasonable apprehension of immediate danger, and that plaintiff was not in a state of peril or apparent peril. 3. That said plea is no answer to the complaint, in that while it avers a want of necessity on the part of the plaintiff to jump from the car, it fails to show that she jumped from the said car to avoid a peril actual or apparent caused by the negligence of defendant or of its servants." To the fifth plea, as originally filed, the plaintiff demurred upon the following grounds: "1. That the plea fails to show that the plaintiff jumped from defendant's moving car when there was no danger or apparent danger from said engine. 2. The plea fails to show that the plaintiff was not in such appearance of danger as to reasonably cause such alarm to her as would justify her in jumping from said car. 3. The plea does not aver that the plaintiff did not have reasonable apprehension of immediate danger, and the plaintiff was not in a state of peril or apparent peril." These demurrers were sustained.

The fifth plea was subsequenty amended by inserting the words "or apparently about" just before the words "to run into said car," and as thus amended issue was joined upon said plea.

On the trial of the cause the evidence for the plaintiff tended to show that the defendant was operating a street car line in the city of Selma; that its cars were drawn by mules; that its track crossed the railroad tracks of the Western Railway of Alabama; that the

[Selma Street & Suburban Railway Company v. Owen.]

.plaintiff boarded one of the cars of the defendant as a passenger, and paid her fare; that while she was thus a passenger on one of the defendant's cars, the driver started across the railroad crossing of the Western Railway; that the driver did not stop his car before starting over the crossing and that just as the mule was upon the railroad track, the driver turned to the plaintiff, who was in the car, and in an excited way said: "My God, mistus, the train is right on us;" that she jumped from her seat and looked and saw that the engine on the track of the Western Railway was within a few feet of the car, and thereupon she ran to the back of the car and jumped off; that just as she started to jump off the driver struck the mule and quickened his pace, and that the jerk caused by the mule starting faster threw the plaintiff to the ground, breaking her ankle bone in two places and also her arm; that her suffering was very severe; that she was kept from her work from three to four months, and was compelled to keep her. limbs bandaged in plaster of paris for nine or ten weeks; that her physician's bill was $50; that she was earning at the time of the injury $45 to $50 per month, and she testified at the trial (about eleven months after the injury) "I have been earning not more than $30 or $35 per month since the accident; I do not earn as much as I did before the accident, because I cannot get around."

It was further shown that on approaching the railroad crossing from the direction in which the car on which the plaintiff was a passenger was going, there was a wall of a warehouse which prevented the driver from seeing the engine approaching on the railroad track. It was further shown that there was an ordinance of the city of Selma which required all engineers or drivers of street cars to bring their cars to a complete stop before going on or driving over any railroad in the city of Selma.

The evidence for the defendant tended to show that when the street car was seen the engine on the track of the Western Railway was 25 or 30 feet away from the street railroad track; that the steam of the engine had

been cut off preparatory to letting the flagman, who was riding on the engine, alight, and that as the engineer saw the mule attached to the street car going on the track of the railway, he immediately applied his brakes and stopped the engine within 5 or 6 feet; that when the engine stopped it was not closer than 20 or 25 feet of the street car track.

In reference to the introduction in evidence of the ordinance of the city of Selma requiring the stopping of cars before crossing a railroad crossing of the city of Selma, the bill of exceptions contains the following recital: "The plaintiff then introduced as a witness H. H. Stewart, and he testified as follows: 'I am city clerk of the city of Selma. I am the custodian of its records and ordinances, and it is my duty to keep them.' Here a written but unprinted book was handed to witness, and witness, continuing, said: 'This is what is called the ordinance book of the city of Selma. It is the book into which ordinances are copied. I got the book from my office. I am the keeper of the book. This book does not contain all of the city ordinances. It only contains copies of the ordinances for the period of time it purports to cover. There are other ordinances and they are in another or other books. At the date of the ordinance in question, E. S. Starr was mayor of Selma, and A. J. Goodwin was clerk of Selma.' Thereupon the plaintiff offered to read in evidence, from said book, what purported to be an ordinance of the city of Selma. The defendant objected to the introduction in evidence of such alleged ordinance on the following separate grounds, to-wit: 1. That it was illegal. 2. That it was irrelevant. 3. That it was not the best evidence. The court overruled the objection, and allowed said alleged ordinance to be read to the jury, and the defendant excepted. The plaintiff then read to the jury, from said book, said alleged ordinance. The ordinance which was so introduced ordained "that all engineers of dummies and drivers of street cars should bring their cars to a complete stop before going on or driving over any railroad crossing in Selma," and prescribed a penalty therefor.

[Selma Street & Suburban Railway Company v. Owen.]

The bill of exceptions then continues as follows: "After said ordinance had been read to the jury, counsel for defendant, by leave of the court, examined said witness, H. H. Stewart, further with reference to said alleged ordinance, and said witness, referring to the name of E. S. Starr where it purports to have been signed in approval of said alleged ordinance, testified as follows: 'I do not know whether this is Mr. Starr's signature or not. I should say it is not. I know Mr. Starr's handwriting. I think it is Mr. Goodwin's or his son's handwriting. I am well acquainted with Mr. Starr's handwriting. I could not say whether this is Mr. Goodwin's or his son's handwriting. I should say this was not Mr. Starr's handwriting.' Then referring to the name of A. J. Goodwin at the end of said alleged ordinance, said witness testified as follows: 'I do not think the name of A. J. Goodwin was written by him. I know his handwriting.' Thereupon the defendant moved to exclude from the jury said alleged ordinance which had been read to them on the following separate grounds, to-wit: 1. That it was illegal. 2. That it was irrelevant; and 3. That it was not the best evidence. The court overruled the motion, and refused to exclude said alleged ordinance from the jury, and the defendant excepted."

The defendant requested the court to give to the jury the following written charge, and excepted to the court's refusal to give the same as asked: (4.) "If the plaintiff, on the occasion complained of, acted in a manner which an ordinarily prudent person would not have acted, and this conduct was the cause of or contributed materially to her injury, she can not recover."

The jury returned a verdict in favor of the plaintiff, assessing her damages at $3,000. Thereafter the defendant moved the court for a new trial, upon the following grounds: "1. The evidence was not sufficient to support a verdict. 2. The verdict was contrary to the evidence. 3. The verdict was contray to the weight of the evidence. 4. The court misstated the law in charge to jury. 5, 6, 7 and 8. The complaint does not state a substantial cause of action. 9. The amount

of damages assessed by the jury is excessive. 10. The court erred in refusing to give charge number 4 requested by the defendant. 11. The court erred in sustaining the plaintiff's demurrer to the defendant's plea numbered 5, as originally filed." This motion was overruled, and the defendant duly excepted.

The defendant appeals.

J. R. SATTERFIELD and MALLORY & MALLORY, for appellant.—(1.)   The negligence complained of was not the proximate cause of the injury.—*Western Ry. of Ala. v. Mutch,* 97 Ala. 194; *Perdue v. L. & N. R. R. Co.,* 100 Ala. 535; *L. & N. R. R. Co. v. Stutts,* 105 Ala. 368; *Williams v. Woodward Iron Co.,* 106 Ala. 254. (2.)   Charge 4 requested by defendant should have been given.—*R. & D. R. R. Co. v. Farmer,* 97 Ala. 145; *Central of Ga. Ry. v. Forshee,* 125 Ala. 199.

PITTS & PITTS, *contra.*—(1.)   The plaintiff was not required to inform the driver that she wished to alight, nor was it necessary that the driver should know that she was about to jump.—*Gov. St. Ry. Co. v. Hanlon,* 53 Ala. 78; *Cook v. Central R. R. & B. Co.,* 67 Ala. 533; *R. & D. R. R. Co. v. Farmer,* 97 Ala. 141; *Stokes v. Saltonstall,* 13 Peters, 181; Wharton on Neg., §§ 93, 304.     (2.)   It was not negligent to leap from the car if a collision was reasonably apparent—*Pa. R. R. Co. v. Aspell,* 23 Pa. St. 147; s. c. 62 Am. Dec. 323; 7 Am. & Eng. Ency. Law (2d ed.), 399-400; 24 Ala. 21; *Ingram v. State,* 67 Ala. 67; *Leonard v. State,* 66 Ala. 461; *Cross v. State,* 63 Ala. 40; *DeArmon v. State,* 71 Ala. 351; *Cook v. Central R. R. Co.,* 67 Ala. 533; *Gov. St. R. R. Co. v. Hanlon,* 53 Ala. 78.     (3.)   The ordinance was admissible in evidence.—*Barnes v. Common Council,* 89 Ala. 602; 17 Am. & Eng. Encc. Law, 267; *Town v. Norman,* 72 Mo. 380; 7 Am. & Eng. Ency. Law, 506. (4.)   Charge 4 requested by defendant is erroneous, in that it requires plaintiff to act in a manner in which an ordinarily prudent person would act when not suddenly frightened or terrified by defendant's negligence, and because it withdraws from the jury the question of

plaintiff being in imminent peril or apparently imminent peril.

A. D. PITTS and PETTUS, JEFFRIES & PARTRIDGE, for appellee, filed an application for rehearing, arguing that charge 4 was erroneous, and citing *Central of Ga. Ry. Co. v. Forshee,* 125 Ala. 199; *McAuley v. T. C. I. & R. R. Co.,* 93 Ala. 356; *Woodward Iron Co. v. Andrews,* 114 Ala. 243; *R. & D. R. R. Co. v. Farmer,* 97 Ala. 141; *Western Ry. of Ala. v. Mutch,* 97 Ala. 194.

McCLELLAN, C. J.—The complaint is not subject to the objections taken by the demurrer filed June 6th, 1900. The plaintiff was under no duty before jumping from a street car about to be run over by a locomotive to inform the driver that she wished to alight. And the complaint makes no claim on account of the driver having caused the mule to quicken its pace, the averment in that regard being descriptive of the occurrence; and it is immaterial whether the driver when he caused the mule to quicken its pace knew that plaintiff was about to jump from the moving car.

The first count of the complaint presents a case of negligence on the part of the driver in going upon the track of the Western Railway in violation of a city ordinance which required him to bring his car to a "complete stop before going on to or passing over" the railroad crossing. The second count makes a case of negligence against the driver for going onto the railroad crossing without stopping, and looking and listening for engines or trains that might be approaching on the railway as upon general principles of law it was his duty to do. And the third count avers the incompetency of the driver and charges negligence against defendant in employing him. In each count it is averred that as the street car was driven onto the railway, an engine came running forward on that track at a high and rapid rate of speed and was about to run into the car upon which plaintiff was seated, that the driver became terrified and frightened and exclaimed

to the plaintiff: "We are going to be killed; the train is on us;" that thereupon the plaintiff, startled and frightened by hearing the frantic cries of the driver, jumped from her seat, and seeing the engine coming at a high rate of speed and that it was about to collide with the car and being thereby still more frightened, she attempted to jump off, and received the injuries of which she complains in jumping off or in being thrown off by a quickened movement of the mule while she was endeavoring to get off: It is not averred that the engine collided with the car; and in point of fact it did not, but was stopped before it reached the street railway track. The complaint does not therefore present a case of *actual* necessity for the course adopted by the plaintiff and in the pursuit of which she was injured. Its averments that the engine was coming toward the car at a high and rapid rate of speed and was about to collide with or run into the car are to be taken to mean that such collision was imminent, that the engine was near to colliding with the car, that it appeared to be on the point of collision.—1 Cyclopedia of Law & Pro., p. 196; *Ala. Gt. So. R. R. Co. v. Arnold,* 84 Ala. 159, 168. By said averments and this construction or interpretation of them a case is made of *apparent* necessity for Mrs. Owen to jump from the moving car. A reasonably apparent necessity for a passenger to leave a moving car, produced by the negligence of the carrier stands upon the same footing as a real necessity so produced, and the rights and liabilities of the parties are to be adjudged accordingly. As said by Chief Justice BLACK, in *Pennsylvania Railroad Co. v. Aspell* (23 Pa. St. 147, s. c. 62 Am. Dec. 323): "If, therefore, a person should leap from the car under the influence of a well-grounded fear that a fatal collision is about to take place, his claim against the company for the injury he may suffer will be as good as if the same mischief had been done by the apprehended collision itself." This doctrine is fully recognized in this State, *Central of Georgia R'y. Co. v. Forshee,* 125 Ala. 199, 214-16; 1 Shear. & Red. on Neg. § 64; 7 Am. & Eng. Ency. Law, pp. 399, 400. The

[Selma Street & Suburban Railway Company v. Owen.]

complaint, we therefore conclude, presents a case of necessity for the act in the doing of which Mrs. Owen received the injuries counted upon. This necessity was a link in the unbroken chain of causation, beginning with the driver's negligence and culminating in the injury. The negligence caused the necessity for plaintiff to leave the car; the leap or attempted leap, or jump from the car caused the injury. There was no intervening, independent, superseding cause for the result complained of. In legal effect it is as if the links in the chain were discarded, as if the plaintiff had remained on the car and received her hurts from actual collision between the engine and the car. The negligence in contemplation of law operated as directly to the infliction of the injury in the case alleged as in the case assumed: In both the injury was the proximate result of the negligence. Upon the foregoing considerations we rest our conclusion that the city court properly overruled defendant's second demurrer to the complaint.

It was manifestly no defense to such a complaint that the plaintiff was in no *actual* peril when she jumped from the car, and was therefore guilty of contributory negligence in leaving the moving car. Pleas 2 and 3, and plea 5 before its amendment were therefore bad, and the court committed no error in sustaining demurrers to them.

The court properly received in evidence the ordinance of the City Council of Selma.—*Barnes v. Common Council of Alexander City,* 89 Ala. 602, and authorities there cited. The book offered was a record-*copy* of the ordinance and of the signatures which had been appended by the mayor and clerk to the *original,* and of course the fact that these names on the record were not in the handwriting of those officers in nowise impugned the integrity of the record.

We do not find that the proposition stated in charge 4, which was refused to the defendant, is substantially embraced in any of the charges given at defendant's request. It is a sound exposition of law pertinent to the case. Of course plaintiff's conduct in respect of being

prudent or negligent is to be judged of by reference to all the circumstances surrounding her at the time, and these circumstances we conceive to be fairly submitted to the jury in this instruction. The charge should have been given.

Leaving out of view the 10th ground of the motion for a new trial—the refusal of the court to give charge 4— we would not disturb the court's denial of that motion.

Reversed and remanded.